SVK

**WO**

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF ARIZONA**

| | | |
|---|---|---|
| Armando Antonio Marroquin, | ) | No. CV 10-0596-PHX-DGC (LOA) |
| Plaintiff, | ) | **ORDER** |
| vs. | ) | |
| MacDonald, Warden, et al., | ) | |
| Defendants. | ) | |

Plaintiff Armando Antonio Marroquin filed this civil rights action under 42 U.S.C. § 1983 against various officials of the Corrections Corporation of America's (CCA) Florence Correctional Center (FCC). (Doc. 1.) Defendants Hudson and Ward move to dismiss on the ground that Plaintiff failed to exhaust his administrative remedies.[1] (Doc. 17.) The matter is ready for ruling. (Docs. 28, 29.) The Court will grant the motion and terminate the action.

**I.     Background**

In Count Two (Doc. 1 at 5), Plaintiff asserts that on January 13, 2009, Ward violated Plaintiff's Eighth and Fourteenth Amendment rights by intentionally informing inmates in Plaintiff's unit that the grievance Plaintiff had filed against prison officials was a grievance against the inmates and that, as a result, Plaintiff was assaulted on July 9, 2009, by one of the inmates and suffered multiple facial fractures from the assault.  Plaintiff also claimed that

---

[1] The Court issued an Order, required under <u>Wyatt v. Terhune</u>, 315 F.3d 1108, 1120 n. 14 (9th Cir. 2003), informing Plaintiff of his obligation to respond and the evidence necessary to rebut Defendants' contentions.  (Doc. 20.)

Ward searched Plaintiff's cell daily in retaliation for the grievance.

In Count Three (Doc. 1 at 6-7), Plaintiff asserted that, after he was assaulted in July 2009, he repeatedly requested clean clothes and a shower because he smelled and his clothes were bloody and that he told Defendant Prison Lieutenant that he was being subjected to cruel and unusual punishment, but he did nothing.  Plaintiff alleged that he requested grievance forms to report the Prison Lieutenant's conduct and the Prison Lieutenant retaliated against Plaintiff, in violation of the Eighth and Fourteenth Amendments, by placing Plaintiff in a segregation unit without medical care, clothing, or a shower.

In Count Four (Doc. 1 at 8), Plaintiff alleged that Hudson violated Plaintiff's Eighth and Fourteenth Amendment rights by intentionally informing inmates in Plaintiff's unit that a grievance Plaintiff had filed against prison officials was a grievance filed against the inmates.  Plaintiff asserted that Hudson did this as retaliation and that, as a result, he was assaulted on July 9, 2009, by one of the inmates.  Plaintiff also asserted that in retaliation for Plaintiff's grievance, Hudson searched Plaintiff's cell daily.

On screening, the Court directed Hudson, Ward, and the unknown Prison Lieutenant to answer these allegations or otherwise respond by appropriate motion and dismissed the remaining Defendants and claims.[2]  (Doc. 6.)

**II.    Motion to Dismiss**

    **A.    Legal Standard**

The PLRA provides that a prisoner may not bring a lawsuit with respect to prison conditions under § 1983 unless all available administrative remedies have been exhausted.  See 42 U.S.C. § 1997e(a); Vaden v. Summerhill, 449 F.3d 1047, 1050 (9th Cir. 2006); Brown v. Valoff, 422 F.3d 926, 934-35 (9th Cir. 2005).  He must complete the administrative review process in accordance with the applicable rules.  See Woodford v. Ngo, 548 U.S. 81, 92 (2006).  Exhaustion is required for all suits about prison life, Porter v. Nussle, 534 U.S. 516, 523 (2002), regardless of the type of relief offered through the administrative process, Booth v. Churner, 532 U.S. 731, 741 (2001).

---

[2] The unknown Prison Lieutenant has not been served.  (Doc. 26.)

1    Exhaustion is an affirmative defense.  <u>Jones v. Bock</u>, 549 U.S. 199, 216 (2007).

2    Defendants bear the burden of raising and proving the absence of exhaustion.  <u>Wyatt</u>, 315

3    F.3d at 1119.  Because exhaustion is a matter of abatement in an unenumerated Rule 12(b)

4    motion, a court may look beyond the pleadings to decide disputed issues of fact.  <u>Id.</u> at 1119-

5    20.  Further, a court has broad discretion as to the method to be used in resolving the factual

6    dispute.  <u>Ritza v. Int'l Longshoremen's & Warehousemen's Union</u>, 837 F.2d 365, 369 (9th

7    Cir. 1988) (quotation omitted).

8    **B.    Parties' Contentions**

9    **1.    Defendants**

10   In support of their motion, Defendants submit the affidavit of Audrey Partain,

11   Grievance Coordinator at FCC (Doc. 17, Ex. 1, Partain Aff.); a Memorandum: *Grievance*

12   *Procedures for CDCR Inmates* (<u>id.</u>, Ex. A); CCA, California Inmate Orientation to FCC and

13   Plaintiff's acknowledgment (<u>id.</u>, Exs. B, C); Grievance Log (<u>id.</u>, Ex. D); and Plaintiff's

14   Grievance documents (<u>id.</u>, Exs. E-G.)

15   An inmate initiates the grievance process using the informal resolution process by

16   submitting a 14-101A Informal Resolution form.  (<u>Id.</u>, Ex. 1, Partain Aff. ¶ 14.) The inmate

17   must use this process within 15 days of the incident.  (<u>Id.</u> at ¶ 15.)  Within 10 days of

18   receiving the Informal Grievance, the facility grievance officer must conduct an investigation

19   and render a decision.  (<u>Id.</u> ¶ 17.)  The inmate has 15 days from the time he receives that

20   decision to submit a formal grievance.  (<u>Id.</u> ¶¶ 18-19.)  The Grievance Coordinator has 30

21   days to render a written decision on the formal grievance.  (<u>Id.</u> ¶¶ 20-22.)  If the prisoner is

22   still dissatisfied, he has 15 days from the time he receives that decision to appeal to

23   California Out-of-State-Facilities Appeals Coordinator (COCF). (<u>Id.</u> ¶¶ 23-24.) The COCF's

24   decision is final and constitutes exhaustion of administrative remedies.  (<u>Id.</u> ¶¶ 24-26.)  If an

25   inmate fails to follow this procedure or omits any part of it, he has not exhausted the

26   available administrative remedies.  (<u>Id.</u>)

27   All inmate grievances are documented in a Grievance Log maintained by FCC, and

28   copies of all grievances are maintained in each inmate's grievance file.  (<u>Id.</u> ¶ 28.)

1   Defendants assert that the grievance policy provides that the issues raised in the Complaint
2   are grievable matters.  (Id. ¶¶ 34, 39.)

3          Defendants further assert that although the Complaint alleged that the conduct
4   complained of in Counts Two and Four began in January 2009, Plaintiff did not initiate the
5   grievance process concerning these issues until seven months later, on August 24, 2009. (Id.
6   ¶ 36.) FCC's record maintained under grievance #C-163, shows that although Plaintiff dated
7   the Informal Resolution July 28, 2009, the Case Manager did not receive it until August 23,
8   2009.  (Id.  ¶ 37, Ex. G.)  Defendants assert that the grievance was denied on August 23,
9   2009, based on the time frame per policy § 14-101, which requires an informal grievance to
10  be filed within fifteen 15 days of the alleged incident. (Id.)  Plaintiff then  resubmitted the
11  Informal Resolution form to Partain, who denied it on August 24, 2009 for the same
12  reason—it was out of time frame.  (Id.)  Plaintiff, therefore, did not timely grieve the conduct
13  he alleged in his Complaint, which he claimed began in January, 2009.  (Id.)

14         Defendants also contend that if Plaintiff was dissatisfied with the denial of his
15  informal grievance #C-163, he had 15 days from August 23, 2009 to file a formal grievance
16  pursuant to § 14-101.4(N)(2). (Id. ¶ 38.)  Plaintiff never filed a formal grievance regarding
17  this matter and, therefore, failed to exhaust all administrative remedies available to him. (Id.)

18         As to the allegations in Count Three, Defendants assert that  review of the Grievance
19  Log and Plaintiff's grievance file show that although  Plaintiff initiated the grievance process
20  during the relevant time frame, the grievance concerned access to legal materials.  Plaintiff
21  filed no formal or informal grievance forms concerning the issues alleged in Count Three.
22  (Id. ¶ 40.)

23                 **2.     Plaintiff**

24         Plaintiff submits a one-page statement saying that he exhausted his remedies and 70
25  pages of exhibits, including several grievance documents.  (Doc. 28.)

26                 **3.     Reply**

27          In their reply, Defendants address the documents submitted by Plaintiff and argue that
28  the documents do not demonstrate exhaustion; they also submit a second affidavit from

1   Partain.  As to Counts Two and Four, they assert that although Plaintiff began the grievance

2   process by submitting a CDCR Inmate Informal Resolution Form (Form 14-101A) on or

3   about January 5, 2009, this informal grievance addressed only a complaint that Plaintiff was not

4   provided enough food by cafeteria workers; it did not complain of retaliation by Hudson and Ward

5   as alleged in Counts Two and Four.  (Doc. 29 at 3, ref. Doc. 28 at 24-26.)  In addition, the January

6   5, 2009 informal grievance was answered on January 13, 2009 and acknowledged by Plaintiff that

7   same day.  Iif Plaintiff was dissatisfied with the response, he had 15 days from January 13,

8   2009 (or until January 28, 2009), to submit a formal grievance regarding his food portions,

9   but he did not.  (Doc. 29 at 3; Doc. 17, Partain Aff. ¶¶ 15-19.)

10          Defendants assert that on February 12, 2009, Plaintiff attempted to submit a CDCR

11   Formal Grievance Form—the second step in the grievance process—complaining of food

12   portions and new complaints, including an allegation that on January 13, 2009, "high rank

13   officers" told cafeteria workers about Plaintiff's food-portion grievance; that Officer

14   Witworth searched Plaintiffs cell continuously from January 26, 2009 through January 30,

15   2009; that Hudson embarrassed Plaintiff when he complained about food service; that on

16   February 5, 2009, Hudson improperly seized Plaintiff's disinfectant; and that Plaintiff

17   requested to have his cell unlocked at specific times.  (Doc. 29 at 3; ref. Doc. 28 at 19-23.)

18   This grievance was returned to Plaintiff unprocessed because there was no proof that Plaintiff

19   used the first step in the grievance procedure (the informal level) with respect to the new

20   allegations and because he grieved more than one issue per grievance form.  (Doc. 29 at 4,

21   Doc. 29, Partain Aff. ¶¶ 25-26; ref. Doc. 28 at  19.)

22          Defendants argue that in addition to these problems, the grievance was outside the

23   time frames as to most matters complained of and that there were other failures to follow the

24   grievance process.

25   **C.    Analysis**

26          The Court will grant Defendants' motion and dismiss the claims in Counts Two,

27   Three, and Four for failure to exhaust administrative remedies.  Defendants have provided

28   evidence of an available grievance procedure and that Plaintiff failed properly to exhaust the

1   claims in Counts Two, Three, and Four.  Plaintiff fails to rebut Defendants' evidence.

2         The Court has examined the grievance documents proffered by the parties.  Regarding

3   Counts Two and Three, Plaintiff submits a January 5, 2009 grievance that complains only

4   about not being provided sufficient food by cafeteria workers.  (Doc. 28 at 24-26.)  His

5   February 12 CDCR Inmate Formal Grievance Form was returned for failure to attempt

6   informal resolution first.  Thereafter, Plaintiff submitted a CDCR Inmate Informal Resolution

7   form, dated July 28, 2009, and stamped received August 24, 2009.  (Doc. 28 at 14-17.)  In

8   it, he refers to the January 5, 2009 grievance complaining that he was not receiving food

9   because officers "let the workers to give us a little food."  He further claimed in the July

10  Informal Resolution that he was then harassed by Hudson and Witworth and by inmates, and

11  that his cell was searched everyday by Hudson and Witworth.  He asserted that on

12  February 12 he filed a formal grievance that disappeared and that after a couple of weeks

13  officers Ward, Hudson and Witworth were removed from his unit but the workers kept

14  harassing Plaintiff.  He asserted that he was assaulted on July 9 because the grievance was

15  disclosed.  The Staff Response to the Informal Resolution was that it was out of the

16  permissible time frame.

17        The gravamen of Counts Two and Four is that Plaintiff was placed in danger by

18  Defendants when they allegedly told inmate workers that Plaintiff had filed a grievance

19  complaining about small food portions and further that Hudson and Ward searched Plaintiff's

20  cell in retaliation for the grievance.  Although it is unclear from the Informal Resolution and

21  from the Complaint exactly when Defendants allegedly told the inmates about the grievance

22  and searched his cell, it is clear from the sequence of events as related by Plaintiff that these

23  events occurred sometime after January 5 and within a few weeks after February 12.  Thus,

24  even if Plaintiff filed the Informal Resolution on July 28, it was outside the 15-day time

25  frame as to those matters.  The January 5 informal grievance does not address the issues in

26  Counts Two and Four, and Plaintiff fails to dispute Defendants' claim that the February

27  Formal Grievance Form was properly returned for failure to use the informal process first as

28  to all matters raised and as required by the grievance procedure.

1    The PLRA requires proper exhaustion of administrative remedies before filing suit;
2  that is, an inmate must fully exhaust the issues raised in his complaint by using the steps set
3  out in the grievance process, including observing relevant time frames.  See Woodford, 548
4  U.S. at 92.  Plaintiff does not rebut Defendants' evidence that Plaintiff failed to properly
5  exhaust administrative remedies as to the issues in Counts Two and Four.

6    As to Count Three, the Court has examined Plaintiff's remaining documents, which
7  are confusing.  Plaintiff's one-page statement that he exhausted his remedies does not
8  reference any of his exhibits – he points to no specific exhibits to show exhaustion of his
9  claims.  "Judges need not paw over the files without assistance from the parties."  Orr v.
10 Bank of America, 285 F.3d 764, 775 (9th Cir. 2002) (quoting Huey v. UPS, Inc., 165 F.3d
11 1084, 1085 (7th Cir. 1999)).

12   Although Count Three may raise medical claims related to lack of care for injuries
13 resulting from the assault and some of Plaintiff's grievance documents relate to medical care,
14 they are not related to care needed as a result of the assault.  For example, on October 23,
15 2009, Plaintiff submitted an Inmate Health Care Appeal Form complaining that he had been
16 requesting solutions to his back pain for more than two years.  (Doc. 28 at 28.)  On June 30,
17 2009, he complained that he had requested care for 9 months.  (Id. at 29.)  Many of his
18 documents pre-date the assault, and they do not appear to complain about retaliation by a
19 Prison Lieutenant.  Thus, Plaintiff fails to rebut Defendants' evidence that he did not exhaust
20 administrative remedies as to the claims in Count Three.

21   The Court will grant Defendants' motion and dismiss Plaintiff's claims without
22 prejudice.

23 **IT IS ORDERED:**

24   (1)  The reference to the Magistrate Judge is withdrawn as to Defendants' Motion to
25 Dismiss (Doc. 17).

26   (2)  Defendants' Motion to Dismiss (Doc. 17) is **granted**; Plaintiff's claims are
27 dismissed without prejudice.

28

(3) The action is terminated, and the Clerk of Court must enter judgment accordingly.

DATED this 6th day of October, 2010.

_____

David G. Campbell
United States District Judge